INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, (AFL–CIO), LOCAL 2725, Plaintiff, Appellee,

v.

CARIBE GENERAL ELECTRIC PRODUCTS, INC., Defendant, Appellant.

No. 96–1505.

United States Court of Appeals, First Circuit.

Heard Dec. 5, 1996.

Decided March 13, 1997.

Felix Benitez Colon with whom Rivera Tulla & Ferrer was on brief, for appellant.

Luis F. Padilla, Hato Rey, PR, for appellee.

Before BOUDIN, Circuit Judge, CAMPBELL and BOWNES, Senior Circuit Judges.

BOUDIN, Circuit Judge.

The union, representing the employees of Caribe General Electric ("Caribe"), sued the company in the district court for damages and related relief for a refusal to arbitrate, or for an order requiring it to arbitrate, five specific grievances under a collective bargaining agreement. The district court ordered arbitration as to all of the grievances, ruling that the arbitrator should determine whether the grievances were arbitrable. We hold that this was a matter for the court to decide and remand as to four of the grievances for further proceedings.

The facts of importance to this appeal are undisputed. Caribe and its union had a collective bargaining agreement which, as most do, contained many substantive provisions, a grievance procedure, and an arbitration provision providing for mandatory arbitration of specified categories of disputes. During the term of this agreement, Caribe took five different actions that caused the union to invoke the grievance procedure and, when that did not resolve matters, to demand arbitration.

Three of the grievances grew out of one episode: Ibrahim Rosario, Herminio López, and Esteban Calderón were group leaders of three separate departments. The company eliminated one of the departments, integrating its functions into the other two; it then re-assigned López and Calderón as group leaders of the enlarged departments, and retained Rosario but without a leadership post. The fourth grievance concerned Antonio Vázquez, who had been a dispatcher;

Caribe eliminated that position, reallocated some of the duties to a shipping clerk, and left Vázquez in a lower job classification. The fifth grievance involved the temporary assignment of Narciso Torréns for more than 30 days to perform the tasks of two assembly workers who were consecutively on vacation.

When the grievance procedure failed to resolve matters and Caribe refused arbitration, the union brought suit in the district court under 29 U.S.C. § 185, claiming *inter alia* that the grievances were subject to mandatory arbitration and that the company should be required to proceed with arbitration. On cross-motions for summary judgment, the district court ruled that the five grievances were arguably subject to mandatory arbitration and that the arbitrator should resolve this issue.

Caribe has appealed the judgment as to four of the grievances, agreeing that the Torréns matter should be arbitrated. Conversely, the union now concedes that the district court was mistaken in referring the issue of arbitrability to the arbitrator; but it says that all five grievances are subject to mandatory arbitration and that the order to arbitrate should be affirmed outright on this alternative ground.

█ Labor arbitration depends upon contract, *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Tejidos de Coamo, Inc. v. ILGWU*, 22 F.3d 8, 12 (1st Cir.1994), and the collective bargaining agreement ("CBA") in this case provides for mandatory arbitration only in certain categories of cases, including "[t]he claimed violation of a specific provision or provisions" of the agreement. CBA art. XXXIV, § 6(a). But even if a grievance falls within this category, it is excluded from mandatory arbitration by section 7 of the same article under certain conditions, such as where the grievance

(f) Would require an arbitrator to consider, rule on or decide any of the following:

(1) The elements of an employee's job assignment;

(2) The title or other designations of an employee's job classification;

(3) The right of management to assign or reassign work or elements of work.

█ The Supreme Court has held that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418. Here, far from agreeing to leave the arbitrability issue to the arbitrator, the parties provided in their agreement that in the event of a dispute on this issue, arbitration may proceed "only after a final [judgment] of a Court has determined that the grievance ... raises arbitrable issues." CBA art. XXXIV, § 4(a). *Compare Paine-Webber Inc. v. Elahi*, 87 F.3d 589, 600–01 (1st Cir.1996) (finding no clear and unmistakable intent that applicability of a time bar should be determined by the arbitrator).

Thus, we agree with both parties that the district court went astray in ordering arbitration without first deciding itself that each grievance was subject to mandatory arbitration. To do so, the court had to decide that the grievance fell within a provision for mandatory arbitration (*e.g.,* section 6) and was not excluded by any other limiting provision (*e.g.,* section 7). We turn, therefore, to the union's request that we decide the issue of arbitrability ourselves and affirm the district court's arbitration order.

Since the union has not supplied us with the grievances, it is very hard to tell whether each one rests on a colorable claim that a specific provision of the agreement has been violated, as required by section 6. But even with that information, we could not determine without more information whether arbitration of each grievance would "require an arbitrator to consider, rule on or decide" one of the enumerated subjects that section 7(f) excludes from mandatory arbitration. For the same reason, Caribe's alternative request that we direct summary judgment in its favor is without merit.

While a remand for further proceedings is necessary, a further word or two may be helpful to the court on remand. Caribe has not limited its claim of non-arbitrability to section 7(f) but has also invoked other grounds of objection; section 7(e) of the same article, which Caribe has cited on appeal, is a close companion to section 7(f) and might need attention. But we are concerned

about Caribe's repeated invocation of two "management rights" provisions as shields against mandatory arbitration.

One is the basic "management rights" provision, in an article unrelated to arbitration, which seems to us wholly beside the point. CBA art. IV. That provision reserves management rights broadly over a range of potentially pertinent subjects—such as reallocation of work—but the management rights are retained "subject only to those provisions of this Agreement which expressly qualify this right." Given this "subject ... to" proviso, we are baffled as to why Caribe thinks this management rights provision has any relevance.

The union's grievance claims may seem obscure; but to the extent they rest upon the violation of specific provisions, we seriously doubt that the article IV "management rights" clause could be read either to negate those provisions or to restrict arbitration. See CBA art. XXXIV, § 4(b)(4); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960). The parties are welcome to argue this issue on remand, if Caribe chooses to press it, but we do not think the company should be unduly encouraged by its earlier success in *International Assoc. of Machinists & Aerospace Workers v. General Elec. Co.*, No. 89–1115JP, 1990 WL 29806 (D.P.R.1990), which was not appealed.

The arbitration article itself contains a second, somewhat less detailed reservation of management rights, CBA art. XXXIV, § 4(b)(4), but it too appears to permit mandatory arbitration—if otherwise provided— so long as the grievance is based on an express limitation in the agreement and is not subject to section 7's exclusions. See id. ("[T]he parties have not agreed to arbitrate demands which challenge action taken by the company in the exercise of any [management] rights, *except where such challenge is based upon a violation of any such expressed limitations (other than those set out in Section 7 of this Article XXXIV)*.") (emphasis added).

On remand, we suggest that the district court consider on a grievance-by-grievance basis whether—as to each of the four remaining grievances—the grievance (1) is based upon a colorable claim that the company's action violated one or more specific provisions of the agreement and (2) is not excluded from mandatory arbitration by one or more of the exclusions of section 7. Unless both conditions are satisfied, it appears that mandatory arbitration cannot be ordered, so the district court may not need to rule on both conditions.

There may be other bases for, or limitations on, mandatory arbitration that we have overlooked; but we encourage the parties to help the district court focus the issues. As already noted, we doubt that the management-rights reservations are pertinent. And it certainly does not help for the union to invoke the Supreme Court's default presumption in favor of arbitration where, as here, the collective bargaining agreement explicitly negates the presumption. CBA Art. XXXIV, § 4(b)(5); *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419.

Finally, it is worth emphasizing that the issue before the district court on remand in this case is not the merits of the grievances; it is simply whether they are subject to mandatory arbitration. All that the union complained of in this case was the failure to afford mandatory arbitration, and that is the only issue before us or the district court. *AT & T Technologies*, 475 U.S. at 649–50, 106 S.Ct. at 1418–19. Needless to say, even if a grievance is excluded from mandatory arbitration, the union is not necessarily without contractual remedies for an alleged violation of the agreement. *Cf. Vaca v. Sipes*, 386 U.S. 171, 184 n. 9, 87 S.Ct. 903, 913 n. 9, 17 L.Ed.2d 842 (1967).

The order of the district court is therefore *affirmed* as to the Torréns grievance but *modified* to require arbitration on the merits, the company having agreed that this grievance is arbitrable. The order requiring arbitration is *vacated* as to the other four grievances and *remanded* for further proceedings not inconsistent with this decision.

*It is so ordered.*