NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0539n.06
Filed: September 2, 2008

No. 06-2116

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SHELDON HALL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| MICHIGAN STATE POLICE | ) | |
| DEPARTMENT, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**Before: DAUGHTREY and GILMAN, Circuit Judges; and MILLS, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Sheldon Hall, an African-American employee

of the Michigan State Police Department (MSP), filed suit against the MSP for failing to promote

him to the rank of sergeant in 2003. He alleged racial discrimination, as well as retaliation for a

lawsuit that he had filed against the MSP three years earlier. The district court granted summary

judgment to the MSP because (1) the promotion was initially offered to another African-American

employee, (2) Hall declined to participate in a second round of interviews after the person originally

chosen for the job turned down the offer, and (3) Hall was unable to establish that MSP's legitimate

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

nondiscriminatory reason for not promoting him was pretextual. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.     Factual background

Hall has worked for the MSP as an officer in the Motor Carrier Division since 1987. In 1994, he began working at the MSP's Richmond Post, and he continues to work there. Hall filed a complaint with the Michigan Department of Civil Rights (MDCR) in 1999, alleging that he had been the subject of racial discrimination because he had not received a promotion the year before. That complaint eventually became the foundation for a lawsuit in federal district court that Hall filed in 2000. Despite the lack of a settlement, Hall later voluntarily dismissed the case with prejudice.

In the spring of 2003, Hall applied for a sergeant position at the Richmond Post. He was granted an interview along with four other candidates—two Caucasian males and two African-American females. The candidates were interviewed in May of 2003 by a panel of three MSP officers. All three of the interviewing officers were trained in the Targeted Selection Process, the nondiscriminatory procedure employed by the MSP for making promotion decisions. The Targeted Selection Process requires the interviewing officers to rate the candidates in a number of areas on the basis of their responses to specific questions. A written exercise is also included in the process.

Following the interviews, one of the candidates scored 31 points and the other four candidates all scored 30 points. Natalie Johnson, the African-American female who scored 31 points, was offered the position. In June of 2003, Johnson declined the promotion for reasons not

specified in the record. Because the four remaining candidates had the same total score, Susan Ventocilla, the MSP's Human Resources Manager, recommended that a second round of interviews be held with the four candidates who had tied during the initial interview process.

Hall was contacted and asked to participate in the second round of interviews. He declined to be reinterviewed and removed himself from consideration for the promotion. After the three remaining candidates were interviewed a second time, the job was offered to Daniel Engelman, a Caucasian male, who accepted the position.

**B.     Procedural background**

Hall filed a complaint with the MDCR in July of 2003, alleging that he had been denied the promotion to sergeant because of racial discrimination and in retaliation for filing his earlier lawsuit. He later requested that the MDCR complaint be dismissed so that he could pursue his claims with the Equal Employment Opportunity Commission (EEOC). The MDCR granted his request in November of 2003.

In February of 2004, the EEOC issued a right-to-sue letter, concluding that it was unable to determine whether the MSP had discriminated or retaliated against Hall. Hall then filed the present lawsuit in federal district court. The MSP filed a motion for summary judgment, and the district court held a hearing on the motion. After determining that there was no racial discrimination because the job was initially offered to an African-American female and that Hall had declined to participate in the second round of interviews, the district court granted summary judgment to the MSP. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review de novo a district court's grant of summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Hall's discrimination claim

To establish a discrimination claim under Title VII of the Civil Rights Act of 1964, Hall had to produce either direct or circumstantial evidence in support of his claim. *See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Direct evidence is proof that, if believed, compels the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999). If direct evidence of discrimination is produced, then the burden shifts to the employer to show that it would have taken the adverse employment action even in the absence of discrimination. *Id.*

Hall argues that a letter written in 2002 by one of his supervisors, Sergeant Haskin Garland, as well as comments allegedly made by three other officers during the interview process, constitute direct evidence of racial discrimination in connection with his failure to be promoted. The letter

from Garland, which was written eight months before the initial interviews for the sergeant position, does not provide any evidence that Hall was denied the promotion because of race. In the letter, Garland lodges a number of complaints about the general practices of the Motor Carrier Division with respect to promotions. Garland also writes at some length about Hall's qualifications for promotion to sergeant, and speculates that Hall had been passed over for promotion because of the lawsuit that he filed in 2000. But Garland was not involved in any way with the interview process for the sergeant position at issue in this lawsuit. Moreover, Garland's opinion that Hall was well-qualified for promotion does not denigrate the qualifications of the other candidates for the position.

Hall also alleges that Lieutenant Ron Crampton, Lieutenant Robert Yorke, and Sergeant Steve Blankenship all made comments to him that convinced him not to proceed through the second round of interviews because he was being discriminated against. First, Crampton allegedly told Hall two months before the first round of interviews that Hall was Crampton's "choice to be promoted, but she don't want to promote you." The "she" in question was Inspector Brenda Dietrich, a member of the selection committee. According to Hall, Crampton allegedly told him that Dietrich was "still upset over the lawsuit you filed . . . [earlier]." Despite this alleged forewarning, however, Hall still initially applied for the promotion.

Hall also claims that Yorke told him after the first round of interviews that "the job should have been yours," and that Blankenship informed him that the selection committee "said they ain't promoting you." The problem with all of these statements is that they do not indicate that race was a motivating factor in the decision not to promote Hall. This court has held that "[i]solated and ambiguous comments are insufficient to support a finding of direct discrimination." *White v.*

*Columbus Metro. Housing Auth.*, 429 F.3d 232, 239 (6th Cir. 2005).  Even if all of the comments

that Hall points to were to be believed, not a single one indicates that it was Hall's *race* that was the

deciding factor in whether he was to get the job.

In the absence of direct evidence of discrimination, Hall's claims are to be analyzed under

the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Hall can establish a prima facie case of racial discrimination in the context of a failure-to-promote

claim  if he shows "(1) that he is a member of a protected class; (2) that he applied and was qualified

for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees

of similar qualifications who were not members of the protected class received promotions."

*Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

The claim that Hall did not get the promotion to sergeant because of racial discrimination

fails for the two specific reasons articulated by the district court.  First, during the initial round of

interviews for the promotion, the person who was offered the job was an African-American female.

Even though she declined the job offer, the fact that the promotion was offered to an African-

American precludes a finding of racial discrimination in the first round of interviews.  Hall, in other

words, failed to establish the fourth element of a prima facie case of racial discrimination because

the person who was offered the position was a member of the same protected class to which he

belongs.  *See id.* (requiring that the promotion go to an employee who is *not* a member of the

protected class in order for the plaintiff to establish a prima facie case).

Second, Hall declined to participate in the second round of interviews.  This failure to apply

means that Hall was unable to establish the second element of his prima facie case. *See id.* (requiring

the plaintiff to have applied for the promotion in question). True enough, this court has previously recognized an exception to the general rule that an individual must apply for a position before he can bring a failure-to-promote claim. But that exception exists only when "the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000). That was not the case here, however, because Hall was fully aware of the second round of interviews and declined to participate simply because, as his attorney said at the hearing on MSP's motion for summary judgment, "he should have been promoted on the first time and there shouldn't have even been a second interview." We thus affirm the district court's grant of summary judgment to the MSP on Hall's discrimination claim.

## C.      Hall's retaliation claim

Hall also alleges that he was denied the promotion to sergeant in retaliation for the civil rights lawsuit that he filed in 2000. In order to establish a prima facie case of retaliation under Title VII, an employee must establish that (1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, or "the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor[,]" and (4) "there was a causal connection between the protected activity and the adverse employment action or harassment." *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis omitted). This court has explained that "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish

causality" under the fourth element. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Once a plaintiff establishes a prima facie case of unlawful retaliation, "the burden shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for its actions." *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001) (internal quotation marks omitted). "Even though the burden of going forward with evidence to answer [the] prima facie case . . . moved to the [defendant], the ultimate burden of persuasion never shifted from the plaintiff." *Id.* at 552 (citation omitted) (alterations in original). If the employer satisfies this burden, the employee must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the employer was in fact only a pretext designed to mask retaliation. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews*, 231 F.3d at 1021.

In the present case, four years passed between Hall's first complaint to the MDCR and his failure to get the promotion in 2003. Hall must thus provide other evidence of retaliatory conduct to establish causality. *See Mickey*, 516 F.3d at 525. The only evidence relevant to Hall's retaliation claim is the statement allegedly made by Crampton before the initial interviews that Dietrich would not promote Hall because she was still upset about the earlier lawsuit.

This court has explained that "[t]he burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id.* at 523. So even if we were to assume that Hall's

evidence establishes the necessary causal connection between the 2000 lawsuit and his failure to obtain the promotion in 2003, he has still failed to show that the MSP's legitimate, nondiscriminatory reason for its decision was simply a pretext designed to hide discrimination. Specifically, the MSP points to Hall's lower score on the Targeted Selection Process than the score of the individual initially selected for the position and the fact that Hall declined to participate in the second round of interviews. Crampton, the only person who provided evidence in support of Hall's retaliation claim, also stated in his affidavit that "[a]t no time during the interview process that resulted in the promotion of Officer Johnson were the impermissible factors of race and retaliation used as a consideration."

Hall has not offered any evidence that calls into question the scoring during the first round of interviews and, as discussed above, the other statements that he claims persuaded him not to participate in the second round of interviews do not implicate either his race or his earlier lawsuit. In other words, he has failed to "produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *See Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (internal quotation marks omitted) (alteration in original). Hall's retaliation claim is therefore without merit.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.