NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0191n.06

No. 21-3859

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PATRICIA D. WILKES, as Personal Representative )
of the Estate of Marquise Shawndell Byrd, )
)
    Plaintiff-Appellant, )
)
    v. )
)
KOKOSING, INC., )
)
    Defendant-Appellee. )
)

**FILED**
May 09, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

Before: SUTTON, Chief Judge; WHITE and THAPAR, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Patricia D. Wilkes, as personal representative of the estate of her son, Marquise Shawndell Byrd, appeals the district court's grant of summary judgment to Defendant-Appellee, Kokosing, Inc., in this negligence action seeking damages for Byrd's injuries and death. Byrd died tragically after being struck by a sandbag that a teenager dropped from a bridge Kokosing was removing and replacing pursuant to a contract with the Ohio Department of Transportation. Because the record evidence demonstrates that Kokosing followed the contract's mandated plans and specifications, and there is no evidence that the plans and specifications were so obviously defective or dangerous that no reasonable contractor would have followed them, the district court properly granted Kokosing summary judgment under Ohio law.

I.

In 2017, Defendant-Appellee Kokosing was hired by the Ohio Department of Transportation (ODOT) to remove and replace the Indiana Avenue bridge, which spans I-75 in Toledo, Ohio. Plans for the project were designed by a separate engineering company and were approved by ODOT. Under the project plans, the 2016 ODOT Specifications governed the construction; the plans also incorporated ODOT Standard Drawings related to construction. The contract between Kokosing and ODOT obligated Kokosing to perform its construction work according to these plans, specifications, and drawings.

Prior to construction, the bridge had three lanes of traffic in the center and pedestrian sidewalks along the north and south sides that were protected on their outer edges with fencing. All of this would be removed and replaced as part of the project. The City of Toledo did not want the surrounding neighborhoods to be cut off, so the work was ultimately designed to proceed in phases. During Phase 1—the only phase relevant here—the northern portion of the bridge, which consisted of two lanes of traffic and a pedestrian sidewalk with protective fencing, was entirely removed. The southern portion of the pre-existing bridge remained, consisting of a single traffic lane on its northernmost side and a sidewalk with protective fencing on its southernmost side.

During Phase 1, signs and barricades directed pedestrians to the lone sidewalk on the southernmost side of the bridge. Kokosing placed sandbags on the feet of some barricades for stability, per ODOT Standard Drawing MT-101.60, as the barricades could not be mounted into the ground because of underground utilities. A row of portable concrete barriers lined the outer edge of the single traffic lane on the northernmost side of the bridge. The project plans did not call for protective fencing to be placed atop the barriers and the drawing that is part of the plans does not show protective fencing. An ODOT Standard Drawing described how to install fencing

on new and existing concrete bridge railings, but said nothing about installing fencing on temporary, portable concrete barriers during construction. Nor was there an ODOT Specification related to temporary fencing.

ODOT had primary authority over the construction project and carried out inspections to ensure that Kokosing was following the mandated plans and specifications. ODOT could suspend work if Kokosing failed "to correct conditions that are unsafe for the workers or the general public," failed "to comply with the Contract Documents," or failed "to comply with [ODOT's] orders." R. 23-2 PID 214. ODOT was also authorized to suspend the work "if there is a question regarding the Contract Documents, use of unapproved material, or safety." R. 23-2 PID 215.

According to ODOT's daily work report, it once instructed Kokosing to install a message board on I-75, and then to install object markers and reflectors on portable concrete barriers on I-75's shoulders. Kokosing also reported that ODOT directed it to add traffic-control items at the east end of the bridge to warn against wrong-way traffic. ODOT never directed Kokosing to install temporary fencing on the portable concrete barriers lining the northernmost edge of the bridge during Phase 1.

On December 19, 2017, while Phase 1 was still underway, Marquise Shawndell Byrd was a passenger in a vehicle travelling south on 1-75 when the windshield of the vehicle was struck by a sandbag. The sandbag broke through the windshield and struck Byrd. Byrd died a few days later from blunt force trauma to his head and neck. Police determined that the sandbag had been dropped from the live traffic lane of the Indiana Avenue bridge, over the portable concrete barriers lining its northernmost edge.

Plaintiff-Appellant Patricia D. Wilkes filed this action as personal representative of Byrd's estate, alleging that Kokosing was negligent in failing to prevent pedestrians from dropping objects

off the Indiana Avenue bridge. Kokosing moved for summary judgment, arguing, in part, that it could not be held liable under Ohio law because it had followed the plans and specifications mandated under its contract with ODOT, and the plans and specifications were not so obviously defective or dangerous that no reasonable contractor would have followed them. The district court granted Kokosing's summary-judgment motion after determining that Kokosing had presented undisputed evidence showing that it carried out the construction according to ODOT plans, specifications, and directions. Wilkes timely appealed.

## II.

We review a grant of summary judgment de novo. *Int'l Union v. Cummins, Inc.,* 434 F.3d 478, 483 (6th Cir. 2006). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## III.

Under Ohio law, a contractor is liable to all those who may foreseeably be injured by its work when it fails to disclose dangerous conditions known to it and when the work is negligently done. *Jackson v. City of Franklin*, 554 N.E.2d 932, 935 (Ohio Ct. App. 1988). There is, however, an important exception: "the contractor is not liable if he has merely carried out carefully the plans, specifications and directions given him, since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously defective and dangerous that no reasonable man would follow them." *Id.* (citations omitted); *see also Farr v. Safe-Way Barricades, Inc.*, No. L-97-1258, 1998 WL 336315, at *5 (Ohio Ct. App. June 12, 1998) ("[O]nce a contractor has agreed to undertake performance of a contract with ODOT, the contractor cannot be held liable for

negligence unless he does not follow the plans and specifications or unless the plans are so obviously defective that no reasonable person would follow them."). Even if the contractor's experience suggests that another means of construction might be better, a contractor is justified in relying on the plans and specifications supplied by an engineer that it contracted to follow, except, again, when they are "so obviously defective that a contractor of average skill and ordinary prudence would not have attempted the construction according to the plans." *Jackson*, 554 N.E.2d at 936.

Thus, a contractor seeking summary judgment under this doctrine must identify portions of the record that demonstrate it performed according to the plans and specifications it contracted to follow and that it was reasonable to follow them. The nonmoving party must then set forth specific facts showing that the contractor failed to follow the plans and specifications or that a contractor of average skill and ordinary prudence would not have followed them because they were so obviously defective or dangerous. *Id.* at 936–37. If the nonmoving party cannot make this showing, the contractor is entitled to judgment as a matter of Ohio law. *Id.* at 937.

Kokosing's evidence establishes the following facts. An engineering company, not Kokosing, planned the Indiana Avenue bridge construction project. The project plans incorporated ODOT construction specifications and drawings, and ODOT approved the plans. Kokosing entered into a contract with ODOT to remove and replace the bridge according to the project plans, which called only for portable concrete barriers without protective fencing on the northernmost edge of the bridge during Phase 1, and did not require Kokosing to take measures to secure sandbags or protect against vandalism on the construction site. The ODOT Standard Drawings incorporated by the project plans allow sandbags to be placed on the feet of barricades and do not call for temporary fencing to be installed on bridges under construction. During the relevant time,

ODOT inspected Kokosing's work and never found fault with the absence of temporary fencing on the portable concrete barriers or the lack of other safety measures, such as sandbag controls, or a guard at the construction site. An ODOT engineer explained that temporary protective fencing was not included in Phase 1 because pedestrian access had been eliminated on the northern side of the bridge, where only a live traffic lane remained. Finally, before December 19, 2017, Kokosing's regional manager had never used temporary fencing on other projects.

Wilkes offers a variety of evidence, including police reports, photos of the construction site, and news accounts of incidents involving objects thrown from other bridges. However, none of this evidence speaks to whether a contractor of average skill and ordinary prudence would have considered the plans and specifications mandated by Kokosing's construction contract— specifically, placing portable concrete barriers without protective fencing on the northern edge of the bridge during Phase 1 and placing unsecured sandbags on the feet of barricades—so obviously defective or dangerous that it would not have followed them. Nor does Wilkes's proffered evidence show that Kokosing deviated from the plans and specifications that it contracted to follow. Wilkes relies on ODOT's Bridge Design Manual to make this showing, but the Bridge Design Manual provides instruction to bridge designers—i.e., engineers, not contractors constructing the bridge—and did not form part of the plans and specifications Kokosing was obligated to follow under its contract with ODOT. Further, section 305.2 of the Bridge Design Manual clearly requires permanent protective fencing on most bridges after they have been constructed or fully rehabilitated, but says nothing about temporary fencing on bridges under construction.[1]

---

[1] After Byrd's death, ODOT added a new section to the Bridge Design Manual to specifically require temporary protective fencing during bridge construction and created a new design data sheet and standard drawing for such fencing.

In sum, evidence submitted by Kokosing demonstrates that it followed the project plans and specifications when performing its construction work. The evidence also demonstrates that it was not unreasonable in following these plans and specifications: the plans had been designed by the project engineer and approved by ODOT; the ODOT specifications and drawings were standard for such construction projects; Kokosing's regional manager had never worked on a project that required temporary fencing before; and ODOT never directed Kokosing to install temporary fencing or implement any other safety measure after repeatedly inspecting Kokosing's work. Wilkes, on the other hand, offers no evidence to show that a genuine dispute remains. Thus, reasonable minds could only conclude that Kokosing cannot be liable for negligence under Ohio law.

We AFFIRM.