*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

NORMAN VANPAMEL; THOMAS SLAGHT,
          *Plaintiffs-Appellants*,

    *v.*

TRW VEHICLE SAFETY SYSTEMS, INC.; TRW
AUTOMOTIVE, INC.,
          *Defendants-Appellees*.

No. 12-2173

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-10453—George C. Steeh, District Judge.

Argued: June 11, 2013

Decided and Filed:  July 23, 2013

Before:  COLE and McKEAGUE, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** William A. Wertheimer, Jr., LAW OFFICE OF WILLIAM A. WERTHEIMER, JR., Bingham Farms, Michigan, for Appellants.  Todd A. Dawson, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellees.  **ON BRIEF:** William A. Wertheimer, Jr., LAW OFFICE OF WILLIAM A. WERTHEIMER, JR., Bingham Farms, Michigan, David R. Radtke, Darcie R. Brault, McKNIGHT, McCLOW, CANZANO, SMITH & RADTKE, P.C., Southfield, Michigan, for Appellants. Todd A. Dawson, Gregory V. Mersol, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellees.

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

––––––––––––––––––

**OPINION**

––––––––––––––––––

ZOUHARY, District Judge.  This case involves a dispute over changes made to a retirement healthcare benefit plan.  Plaintiffs-Appellants Norman Van Pamel and Thomas Slaght, two retirees from Defendant-Appellee TRW Vehicle Safety Systems, Inc. (TRW),[1] brought this action on behalf of themselves and a purported class of "similarly situated . . . retirees and surviving spouses," asserting a breach of contract claim under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), as well as a claim for benefits under Section 502(a)(1)(B) of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B).

After Plaintiffs filed their Complaint with the district court, TRW filed a motion to compel arbitration, citing the arbitration provision in an amendment to the collective bargaining agreement (CBA) between Plaintiffs' union, Local 471 of the United Automobile, Aerospace, and Agriculture Implement Workers of America (Union) and TRW.  The district court granted TRW's motion and Plaintiffs now appeal, arguing through various theories, that retirees cannot be compelled to arbitrate benefit disputes with their former employer.

For the reasons set forth below, we AFFIRM the district court's judgment as to the two named Plaintiffs and decline to address the rights of hypothetical plaintiffs.

## BACKGROUND

The Union and TRW negotiated a series of CBAs, which included a provision for healthcare benefits for retirees.  The last CBA entered into by the Union and TRW became effective December 1, 1993 and was scheduled to expire December 1, 1996. The 1993 CBA provided the following healthcare benefit for retiring employees:

––––––––––––––––––––––

[1] Defendant TRW Automotive, Inc., the other Defendant in this action, is the parent company of TRW Vehicle Safety Systems, Inc.  We refer to both Defendants as "TRW."

(d) Complementary Blue Cross/Blue Shield Plan. The Company will pay the full premium cost for the normal age 65 retiree and the employee's spouse at the time of retirement.

The Company shall provide the following benefit plans and annual defined contribution for early retiree[]s age 55 to 65, who retire on or after December 1, 1993:

Blue Cross/Blue Shield 80/20 Comprehensive Major Medical Plan, $250 member, $500 family deductible, $1,500 person, $3,000 family stop loss. The Company agrees to grant the employees the option to select Health Alliance Plan, Blue Care Network or another approved H.M.O. plan, in lieu of existing coverage.

H.M.O plans shall have a $10.00 deductible per office visit and a $5.00 co-pay per prescription drug.

| | |
|---|---|
| 1 Person | $1,068 |
| 2 Persons | $2,138 |
| Family | $2,662 |

Premium costs for prescription drugs provided under Blue Cross/Blue Shield shall be paid by the Company.

To negotiate the type of plan or remain with current carrier.

Employees who continue insurance above, when Medicare eligible age 65, the Company will pick up the full cost.

The Company will pay the full cost of hospital, surgical, and medical for employees eligible for a disability retirement or to any employee who meets the requirement for a disability retirement but elects the 30 and out pension provision.

The Washington Township plant closed in 1997. In preparation, TRW and the Union entered into a Termination Agreement effective November 20, 1996. The Termination Agreement purported to govern the terms and conditions applicable "with respect to retirees and employees represented by the Union in the bargaining unit at [TRW's] plant located at Washington, Michigan." The Termination Agreement extended the 1993 CBA, set to expire on December 1, 1996, through the plant's closure. With respect to retiree healthcare benefits, the Termination Agreement provided:

Continuation of Benefits - Under CBA and/or Pension Plan
Any bargaining unit employee, retiree, retiree beneficiary, or employee beneficiary, who is receiving or entitled to receive any payment and/or

benefit under the Pension Plan as amended herein or insurance coverage due under the provisions of CBA as amended, at the time of termination of the CBA or Pension Plan or thereafter, shall continue to receive or be entitled to receive such payment and/or benefit as though the CBA and Pension Plan had remained in effect.

Accordingly, the Company will take whatever action is necessary to continue the benefits and/or payments at the same level of benefits and/or payments set forth in the CBA as amended and the Pension Plan as amended.

In accordance with Article XXII(d) of the CBA, the Company will provide the benefit plans and annual defined contribution for early retiree[]s age 55 to 65, who retire on or after December 1, 1993.

In the event an employee retires between the age of 55 and 62 with 30 or more years of service and their spouse is an employee of TRW, the retiree may elect to be covered under the spouses' insurance plan. Should the spouse lo[]se their coverage through TRW, the Company will allow the retiree to enroll in the benefit plans provided under Article XXII(d) of the CBA at the defined contribution provided under this Article. Provided the retiree continues their insurance above, when Medicare eligible age 65, the Company will pick up the full cost of coverage.

The Complaint did not identify the retirement dates for the named individual Plaintiffs. In its Answer, TRW alleged Plaintiff Van Pamel retired on December 1, 1997 and Plaintiff Slaght retired on February 1, 1998. Plaintiffs have not disputed those dates. Effective January 1, 2011, TRW terminated prescription drug coverage for Medicare-eligible retirees, replacing it with an annual contribution to a health reimbursement account for the retirees and their dependents. Plaintiffs allege this change modified their healthcare benefits in violation of TRW's contractual obligation.

The Termination Agreement contained an arbitration provision, which provided:

Any alleged violation of the CBA, its changes and this Termination Agreement will be subject to final and binding arbitration. The arbitrator will be selected by mutual agreement. If no mutual selection is reached, the arbitrator will be chosen according to the procedures of the American Arbitration Association or the Federal Medi[]ation and Conciliation Service.

The district court granted TRW's motion to compel arbitration. The district court applied a presumption of arbitrability based on the clear and broad arbitration provision in the Termination Agreement. It also rejected Plaintiffs' arguments that retirees could not be bound by the Termination Agreement, because it was negotiated by the Union which did not represent TRW retirees, and that retirees had an independent statutory right to bring their healthcare benefit claims.

## ANALYSIS

This Court reviews de novo the district court's decision to compel arbitration. *Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 904 (6th Cir. 2010). This Court "must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008).

### Presumption of Arbitrability

In the context of a labor dispute, "we begin with the presumption that national labor policy favors arbitration." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). Whether a dispute is arbitrable is governed by four principles set forth in *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–51 (1986):

> 1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; 2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; 3) in making this determination, a court is not to consider the merits of the underlying claim; and 4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 485 (6th Cir. 2006) (quoting *United Steelworkers of Am. v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994)).

When there is a general or broad arbitration clause, "the presumption of arbitrability [is] 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Kroger Co.*, 617 F.3d at 905 (quoting *Mead Corp.*, 21 F.3d at 131). This presumption applies to disputes over retiree benefits if: (1) the parties have contracted for such benefits, and (2) there is nothing in the agreement that specifically excludes the dispute from arbitration. *Cleveland Elec. Illuminating Co. v. Util. Workers Union Local 270*, 440 F.3d 809, 816 (6th Cir. 2006).

Plaintiffs argue no presumption favors arbitration of healthcare benefit claims for retirees. However, the decisions upon which Plaintiffs principally rely stand for the proposition that retirees have an independent right "to resolve disputes over contractual benefits directly with the former employer without the union's involvement." *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1486 (6th Cir. 1983). As a corollary, this Court has held that a union must secure the consent of a retiree before it may pursue a claim for contractual benefits on the retiree's behalf. *See Cooper Tire*, 474 F.3d at 282–83; *Cleveland Elec.*, 440 F.3d at 817. These cases, however, are silent on the precise issue presented here -- whether a retiree who brings an *independent* claim for contractual benefits conferred under a CBA, negotiated by a union during the retiree's employment, is bound by a dispute resolution provision.

Plaintiffs claim *Yard-Man* establishes that, in this Circuit, retirees cannot be forced to arbitrate a dispute concerning vested healthcare benefits. Plaintiffs' selective quotations from the case, however, misrepresent its holding which did not address enforcement of an arbitration clause. In April 1977, Yard-Man notified its Jackson, Michigan plant retirees that existing health and life insurance benefits would terminate upon the expiration of the collective bargaining agreement. 716 F.2d at 1478. The UAW filed grievances claiming that Yard-Man's unilateral action in terminating the retirees' insurance benefits violated the collective bargaining agreement. *Id.* Yard-Man

refused to arbitrate, and the UAW filed an action to compel arbitration under Section 301 of the LRMA. *Id.* After the suit was filed and without notice or consultation with the UAW, Yard-Man distributed directly to each retiree lump sum payments of the present value of the supplemental pension rights. *Id.* On appeal, this Court determined that the retirees had vested rights to the insurance benefits, and also that retirees may, consistent with federal labor law, settle their own contractual disputes over retirement benefits directly with their former employer without notice to or consent of their union. *Id.* at 1484.

In *Cleveland Electric*, this Court expressly held that "the presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their collective bargaining agreement and if there is nothing in the agreement that specifically excludes the dispute from arbitration." 440 F.3d at 816. And, "unless there is forceful evidence of a purpose to exclude the claim from arbitration," disputes over retiree benefits are arbitrable. *Id.* (quotation marks omitted).

In the 1993 CBA under which the two named Plaintiffs retired, the parties clearly bargained for retirees' healthcare benefits. Nothing in the CBA or the Termination Agreement expressly excludes these benefits from arbitration. The arbitration provision in the Termination Agreement is controlling and is the exclusive remedy for disputes requiring interpretation or application of the Termination Agreement and the 1993 CBA. Plaintiffs attempt to enforce their right to benefits pursuant to the Termination Agreement, and by extension the 1993 CBA, and they cannot circumvent the arbitration provision simply by virtue of their retiree status.

Plaintiffs' reliance on *Anderson v. Alpha Portland Indus., Inc.*, 752 F.2d 1293, 1298 (8th Cir. 1985) and *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984) is also misplaced. *Anderson* is inapposite because the Sixth Circuit subsequently, and definitively, held that the presumption of arbitrability does apply to retiree benefits disputes. *Cleveland Elec.*, 440 F.3d at 816. *Schneider* is distinguishable because Plaintiffs' claims here arise from collectively bargained agreements rather than a fringe benefit trust agreement.

**ERISA Statutory Claims**

Plaintiffs argue the Supreme Court has held that "statutory claims are not subsumed by a collective bargaining agreement -- even when the agreement promises what the statute requires." Plaintiffs cite *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) in support of the proposition that Plaintiffs could only agree to arbitrate ERISA claims by expressly listing that specific statutory claim in the arbitration provision. In *Penn Plaza*, plaintiff brought an action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq. Id.* at 251. The Court determined that a provision in a collective bargaining agreement that "clearly and unmistakably" requires a union member to arbitrate claims under the ADEA was enforceable as a matter of law. *Id.* at 274. Plaintiffs interpret *Penn Plaza* to mean that retirees cannot be forced to arbitrate their ERISA claim because the arbitration provision in the Termination Agreement did not specifically list ERISA as a claim they would be required to arbitrate.

Plaintiffs apply *Penn Plaza* too broadly. ERISA claims are distinguishable from ADEA claims because ERISA claims are derived, at least in part, on the rights a plaintiff may have under a collective bargaining agreement. In other words, if Plaintiffs' contractual claim fails because the CBA does not create a vested right to healthcare benefits, their ERISA claims must fail as well. The cases cited by Plaintiffs are distinguishable on this point. For example, plaintiff in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) brought a Title VII claim alleging she was wrongfully discharged due to racial discrimination, which is impermissible regardless of the existence of a collective bargaining agreement. The same is true for other cases cited by Plaintiffs. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) (Fair Labor Standards Act right to overtime pay); *McDonald v. City of West Branch*, 466 U.S. 284 (1984) (42 U.S.C. § 1983 First Amendment claim); *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70 (1998) (Americans with Disabilities Act claim). Thus, ERISA claims can be the subject of arbitration pursuant to a CBA, even without an express listing of "ERISA claims" in the arbitration provision, because the genesis of the claim is the agreement, not a statute.

**Plaintiffs Retired After the Termination Agreement Became Effective**

The November 1996 Termination Agreement modified the 1993 CBA, specifying that the 1993 CBA would "remain in full force and effect under the terms of this Termination Agreement, until the plant closes," and provided that "[a]ny alleged violation of the CBA, its changes and this Termination Agreement will be subject to final and binding arbitration." The Termination Agreement expressly stated the 1993 CBA would be "modified as follows" such that "[i]f any provision of the CBA is inconsistent with any provision of the Termination Agreement, the provisions of the Termination Agreement shall govern."

Plaintiffs argue that their right to healthcare benefits derives only from the 1993 CBA, and that this right vested prior to the time the Termination Agreement became effective. However, Van Pamel and Slaght retired in November 1997 and February 1998, respectively, well after the November 1996 Termination Agreement. In other words, Plaintiffs retired under the 1993 CBA as modified by the 1996 Termination Agreement, which expressly required all disputes, including those involving retiree healthcare benefits, be arbitrated. The 1993 CBA cannot be read in isolation without the Termination Agreement.

By bringing the action on behalf of a putative class, Plaintiffs ask this Court to consider whether employees who retired before the Termination Agreement was signed must arbitrate. However, the district court never certified a class and other retirees are not part of this appeal. This Court declines to reach the question of whether these other retirees are bound by the arbitration provision.

**CONCLUSION**

For the foregoing reasons, the district court order compelling arbitration is AFFIRMED.