NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File No: 14a0171n.06

No. 12-1824

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW); JAMES WARD; MARSHALL HUNT; AND RICHARD GARDEN, | ) ) ) ) ) ) ) |  |
| Plaintiffs-Appellees, | ) ) |  |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| KELSEY-HAYES COMPANY; TRW AUTOMOTIVE HOLDINGS CORPORATION; AND NORTHROP GRUMMAN SYSTEMS CORPORATION, | ) ) ) ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants-Appellants, | ) ) |  |
| TRW, INC., aka TRW AUTOMOTIVE, | ) ) |  |
| Defendant. | ) ) ) | OPINION |

Before: ROGERS, GRIFFIN and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** The Kelsey-Hayes Company ("Kelsey-Hayes" or "the Company")[1] appeals an order of the district court partially denying its motion to compel arbitration. For the reasons below, we AFFIRM the decision of the district court.

I.

In 1998, Kelsey-Hayes entered into a collective bargaining agreement ("CBA") [hereinafter, the "1998 CBA"] with the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW" or "the Union"), which represented the employees of its Detroit manufacturing plant. The 1998 CBA provided comprehensive healthcare coverage to its retirees and their surviving spouses; it also specified that any healthcare-related disputes would be exempt from otherwise applicable provisions requiring disputes to be resolved through arbitration. (*See* 1998 CBA, art. XIV, art. V § 4, Supp. "H" and "H-1").

In 2001, Kelsey-Hayes closed its Detroit manufacturing plant, and negotiated a General Release and Termination Agreement [hereinafter, the "Plant Closing Agreement"] with the Union. The Plant Closing Agreement released Kelsey-Hayes from most—but not all—of its obligations under earlier CBAs. Healthcare benefits that had been negotiated under the 1998 CBA remained intact and were incorporated by reference into the 2001 Plant Closing Agreement. The 2001 Agreement also included a general arbitration provision of broad applicability, providing that any disputes arising with the Union would be resolved through arbitration:

---

[1] Kelsey-Hayes Company and its parent company, TRW Automotive Holdings Corp., were acquired by Northrop Grumman in 2002. All three are named defendants in this case, referred to collectively and interchangeably, as "the Company" hereinafter.

2

In the event the Union shall have any dispute or disagreement concerning the interpretation and application of this Agreement, the sole and exclusive recourse of the Union is to submit any dispute or disagreement in writing to the Company within thirty (30) days after the Union shall reasonably have become aware of the existence of any such dispute or disagreement. Within ten (10) days of receipt of the written document, the Company and the Union shall meet to attempt to resolve the matter. Should the meeting fail to resolve the matter, arbitration shall be conducted in accordance with the labor arbitration rules of the American Arbitration Association.

(2001 Plant Closing Agreement, ¶20).

Following the execution of the 2001 Plant Closing Agreement, Kelsey-Hayes continued to provide health care benefits in compliance with the terms of the 1998 CBA for approximately ten years. In September 2011, however, retirees received letters informing them of a change to their healthcare. The letters announced that the Company planned to terminate their participation in its retiree healthcare plan and require them to purchase individual plans for Medicare supplemental insurance with HRA-funding instead.

## II.

In October 2011, the retirees filed this suit under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (a)(3), and claiming that the Company's plan breached the terms of the 2001 Plant Closing Agreement and the terms of the 1998 CBA incorporated therein.

Kelsey-Hayes moved for an order to compel arbitration, relying on the 2001 Plant Closing Agreement's general arbitration clause. Plaintiffs opposed the motion, arguing that healthcare disputes were explicitly removed from arbitration under the 1998 CBA's anti-arbitration provision.

3

The district court initially granted the motion to compel arbitration in its entirety, finding that the 2001 Plant Closing Agreement "extinguished" the 1998 CBA anti-arbitration clauses. Upon reconsideration, however, the district court reversed itself in part, finding that not all of the Plaintiffs' rights were governed by the 2001 Plant Closing Agreement. Specifically, the district court concluded that a subset of the Plaintiffs—those who had retired *prior* to the plant closing in 2001—could not be bound by the terms of the Plant Closing Agreement, because their rights had already vested under the 1998 CBA:

> [T]he Plant Closing Agreement cannot alter the rights of those retirees who had already retired, and whose rights had already vested, prior to the execution of this document. . . . [The Plaintiffs who chose to retire] prior to the signing of this Plant Closing Agreement are not bound by it. *See Allied Chemical and Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 181, n. 20 (1971) ("[u]nder established contract principles, vested retirement rights may not be altered without the pensioner's consent"); *Prater v. Ohio Education Association,* 505 F.3d 437, 444 (6th Cir. 2007) (subsequent agreement between union and employer does not permit employer to amend or terminate retiree benefits that have already vested). Therefore, the now-challenged Order must be modified. Hence, those Plaintiffs who retired prior to April 17, 2001 cannot be required to arbitrate their claims because their benefits and interests are governed by the 1998 CBA.

Kelsey-Hayes filed a timely notice of appeal, arguing that all of the Plaintiffs, including those who retired prior to the execution of the 2001 Plant Closing Agreement, were bound by its general arbitration clause. The appeal raised several other issues which were voluntarily dismissed by the time we heard oral arguments in this case. The only remaining issue is whether employees of the Kelsey-Hayes manufacturing plant who retired prior to the plant closing in 2001 and before the subsequent execution of the Plant Closing Agreement incurred any obligation to arbitrate their dispute over retiree healthcare benefits, pursuant to the general arbitration clause contained in the 2001 Plant Closing Agreement.

4

This Court reviews a district court's conclusions of law regarding whether to compel arbitration de novo. *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008); *see also Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 904 (6th Cir. 2010); *United Steelworkers of Am. v. Cooper Tire & Rubber Co.,* 474 F.3d 271, 277 (6th Cir. 2007); *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 311 (6th Cir. 2000).

It is well-established that parties cannot be compelled to arbitrate a dispute unless they are contractually bound to do so by a valid and enforceable prior agreement. *Cooper,* 474 F.3d at 277 ("[A] party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration." (citation omitted)); *see also IAM v. AK Steel Corp.*, 615 F.3d 706, 711 (6th Cir. 2010) ("[A]rbitration is . . . a matter of contract between the parties. . . . [T]he parties [must] have agreed to submit to arbitration."). A dispute is not arbitrable if the parties' agreement "specifically excludes" the subject matter of that dispute from arbitration. *Cleveland Elec. Illuminating Co. v. Utility Workers,* 440 F.3d 809, 816 (6th Cir. 2006) ("[A] union and an employer may arbitrate retirement healthcare disputes only 'if there is nothing in the agreement that specifically excludes the dispute from arbitration,' and then only with the retirees' 'consent.'"); *see also Cooper*, 474 F.3d at 279 ("[P]arties may exclude disputes arising under a side agreement from arbitration should they include a statement to that effect in the arbitration clause of the CBA or in the side agreement itself."); *UFCW v. Fresh Mark,* 81 F.App'x. 23, 28 n.3 (6th Cir. 2003) ("[P]arties routinely exclude individual claims for benefits from general CBA arbitration and grievance procedures.").

Here, the Kelsey-Hayes employees who retired prior to the 2001 Plant Closing Agreement were no longer members of the Union at the time of the plant closing and were not

represented by the Union in the negotiation or execution of the Plant Closing Agreement. It is well established that when a union negotiates with an employer, the union represents only active employees, and it does not represent the interests of retirees absent their consent. *See Allied,* 404 U.S. at 181 n. 20 ("Since retirees are not members of the bargaining unit, the bargaining agent is under no statutory duty to represent them in negotiations with the employer."); *Amos v. PPG Indus., Inc.*, 699 F.3d 448, 453 (6th Cir. 2012). The Kelsey-Hayes employees who retired prior to the 2001 Plant Closing Agreement thus did not consent to the terms of the Plant Closing Agreement and cannot be compelled to arbitrate under provisions contained in that agreement.

IV.

Accordingly, we **AFFIRM** the district court's order.