Rebecca COOPER, et al., Plaintiffs,

v.

HONEYWELL INTERNATIONAL, INC., Defendant.

Case No. 1:16–cv–471

United States District Court, W.D. Michigan, Southern Division.

Filed 11/18/2016

William A. Wertheimer, Jr., Law Office of William A. Wertheimer, Bingham Farms, MI, John G. Adam, Stuart M. Israel, Legghio & Israel PC, Royal Oak, MI, for Plaintiff.

Cody D. Rockey, Dykema Gossett PLLC, Ann Arbor, MI, James S. Brady, Mark John Magyar, Dykema Gossett PLLC, Grand Rapids, MI, for Defendant.

## OPINION AND ORDER

JANET T. NEFF, United States District Judge

Pending before the Court is Plaintiffs' "Motion to Compel Arbitration of Collectively–Bargained Retiree Healthcare Dispute" (Dkt 24). Defendant filed a Response in opposition (Dkt 26), to which Plaintiffs filed a Reply (Dkt 27). Further, on leave granted, the parties subsequently filed supplemental briefing (Dkts 39 & 40). Having conducted a Pre–Motion Conference in this matter and having now fully considered the parties' written briefs, stipulated statements of fact and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the following reasons, the Court concludes that Plaintiffs' motion is properly denied and that Count IV (Arbitration) will therefore be dismissed.

## I. BACKGROUND

Defendant Honeywell International, Inc. operates a plant in Boyne City, Michigan, among other locations. The UAW represents employees in the bargaining unit of the Boyne City plant. Defendant (and its predecessors) and the UAW have been parties to a series of collective bargaining agreement ("CBAs") covering the Boyne City plant (JSF[1] ¶ 1). Plaintiffs Rebecca Cooper, Morris McKenney and Robert Kolinski are retirees who were in the UAW–represented bargaining unit at Defendant's Boyne City plant (*id.* ¶ 2). Plaintiffs are currently under the age of 65 and enrolled in the retiree healthcare benefit plan currently offered by Defendant (*id.*). Cooper retired on or about March 1, 2016 (*id.*). McKenney retired on or about November 1, 2015 (*id.*). Kolinski retired on or about June 1, 2012 (*id.*).

Article 19 of the 2011–2016 CBA provides, in relevant part, that "[r]etirees under age 65 who are covered under the BC/BS Preferred Medical Plan will continue to be covered under the Plan, until age 65, by payment of 16% of the retiree monthly premium cost" (CBA § 19.7.4, Joint Exhibit [JE] 1, Dkt 25–2 at PageID.245). Article 6 of the 2011–2016 CBA contains a Grievance Procedure, which includes arbitration provisions (JSF ¶ 5).

On November 9, 2015, Defendant sent the UAW and Boyne City retirees letters indicating its intent to terminate retiree medical benefits as of March 31, 2016 (JSF ¶ 4). The next day, November 10, 2015, the UAW filed a grievance, asserting that Defendant's planned termination of retiree medical benefits would constitute a breach of the CBA (JSF ¶ 6; JE 5, Dkt 25–7 at PageID.256). Defendant sent the UAW a response, and the UAW replied (JSF ¶ 7).

Specifically, Defendant responded the following:

1. The Grievance does not allege that the Company has eliminated health care benefits for existing retirees under age 65 during the term of the

---

1. The parties filed a "Joint Statement of Facts" (JSF) (Dkt 25), upon which this Court relies for resolution of this motion unless otherwise indicated.

parties' present collective bargaining agreement. Because no contract violation has been alleged and because the Grievance complains about the Company's future, post-contract expiration intent to exercise its right to terminate retiree health care benefits, the claim is not grievable or arbitrable.

2. To the extent the Grievance is asserted on behalf of existing retirees under age 65, who will continue to receive health care benefits through the expiration date of the parties' present collective bargaining agreement, the claim on behalf of such existing retirees is not grievable or arbitrable.

3. To the extent the Grievance is asserted on behalf of active employees who may retire prior to the expiration of the parties' present collective bargaining agreement and who will be under age 65 as of March 31, 2016, the Grievance is premature, and in any event, because such active employees who retire during the term of the present agreement will cease to be employees upon their retirement, any claim on their behalf is not grievable or arbitrable.

4. The Company reserves the right to have a court decide all questions concerning arbitrability of the claims asserted in the Grievance.

(JE 6, Dkt 25–7 at PageID.259). The word "rejected" was written above the "Appealed to Arbitration" option (*id.* at PageID.258).

On December 28, 2015, Defendant notified the Boyne City retirees that it would not terminate the benefits until December 31, 2016 (JSF ¶ 4). Defendant provided the notice to not only its retirees from Boyne City, an active plant, but also retirees from closed plants in Greenville Ohio; Fostoria, Ohio; and Stamford, Connecticut (PMC Tr., Dkt 19 at PageID.51–54). Defendant indicates that the UAW has not yet brought any claims against it—in arbitration or otherwise—based on the termination of health care benefits for Boyne City retirees (Dkt 26 at PageID.266).

On May 5, 2016, Plaintiffs at bar, three retirees from the Boyne City plant, initiated this case with the filing of a four-count Complaint (Dkt 1). Plaintiffs allege that the proposed termination of coverage breaches the terms of the CBA (Count I) and violates the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132 (Count II). Plaintiffs also present an Estoppel claim (Count III), alleging that Defendant improperly induced employees to end their employment and retire. Last, Plaintiffs allege that Defendant's refusal to arbitrate this dispute constitutes a breach of the CBAs and violates the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (Count IV). Plaintiffs seek to represent a class of all former UAW–represented employees who retired from the plant under Honeywell–UAW collective bargaining agreements and who are under age 65, as well as their spouses and other dependents and surviving spouses (*id.* ¶ 24).

On May 31, 2016, Plaintiffs filed a Pre–Motion Conference Request, proposing to file "a Rule 56 motion as to Count IV (and a Rule 23 motion for class certification)" (Dkt 6 at PageID.20). Plaintiffs asserted that they could show, "based on the undisputed material facts and the law governing CBAs, that the contract issue between the parties should be arbitrated and done so on a class basis" (*id.* at PageID.22). On July 12, 2016, this Court conducted a Pre–Motion Conference, at which time Plaintiffs' counsel indicated that the Court did not need to decide class certification at this point in the litigation, that Plaintiffs "are not going to go forward with a class mo-

tion along with the motion to arbitrate" (PMC Tr., Dkt 19 at PageID.48). Accordingly, the Court issued a schedule permitting the parties to brief Plaintiffs' proposed dispositive motion to resolve Count IV (Arbitration) (Order, Dkt 15).

The parties filed their motion papers in August 2016 (Dkts 24–27). On leave granted, the parties filed supplemental briefing in October 2016 (Dkts 39 & 40), drawing the Court's attention to a decision by the District Court for the Southern District of Ohio, denying a motion to compel arbitration in a suit brought by retirees from Defendant's plant in Greenville, Ohio, *Barbara Fletcher et al. v. Honeywell Int'l, Inc.*, No. 3:16–cv–302 (S.D. Ohio).

## II. ANALYSIS

### A. Motion Standard

 It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (internal quotation marks and citation omitted). In deciding whether to issue an order compelling arbitration, courts are to apply a standard that "mirrors" that required to withstand summary judgment in a civil suit, viewing all facts in the light most favorable to the nonmoving party and determining whether a reasonable fact finder could conclude from the presented evidence that no valid agreement to arbitrate exists. *Rowan v. Brookdale Senior Living Communities, Inc.*, 647 Fed.Appx. 607, 609 (6th Cir. 2016); *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

### B. Discussion

Count IV (Arbitration), which gives rise to the topic of Plaintiffs' current motion, provides in its entirety the following:

49. The 2011–2016 CBA and earlier CBAs contain a grievance and arbitration procedure.

50. The CBAs promise final and binding arbitration.

51. The CBAs do not exclude retiree healthcare disputes from the grievance and arbitration procedure.

52. Termination of retiree healthcare before a retiree is age 65 breaches the CBA and is grievable.

53. On November 10, 2015, UAW filed a grievance (no. 11092015) alleging that Honeywell's threat to terminate retiree healthcare for retirees under age 65 violates the CBA.

54. In late November 2015, Honeywell refused in writing to process this grievance asserting it is not grievable or arbitrable.

55. Honeywell's refusal to arbitrate constitutes a breach of the CBAs and violates the LMRA.

(Dkt 1 at PageID.10).

 Plaintiffs argue that under decisions from the Sixth Circuit and four decisions of the Eastern District of Michigan, "retiree healthcare CBA disputes should be arbitrated unless the governing CBA expressly excludes those disputes from arbitration" (Dkt 24 at PageID.93–95). Plaintiffs point out that although the Honeywell CBAs specifically exclude other benefits disputes, e.g., life insurance disputes, "[t]he Honeywell CBAs do not exclude retiree healthcare disputes from arbitration," thereby entitling Plaintiffs to have their dispute decided in arbitration (*id.* at PageID.96–97).

According to Defendant, Plaintiffs' argument provides only a "cursory review" of the contractual provisions they say provide them the right to arbitrate and that the

contract at issue, in fact, provides only that *the UAW* may appeal unresolved *employee* grievances to arbitration and only with timely notice (Dkt 26 at PageID.264 [emphases in original] ). Defendant therefore argues that Plaintiffs' motion is properly denied where Plaintiffs do not have a right to demand arbitration under the CBA because (1) Plaintiffs are not the UAW, (2) there is no evidence of a timely notice of an appeal to arbitration of an employee grievance, and (3) the contract does not indicate that retiree medical benefits are subject to the employee grievance procedure (*id.* at PageID.264, 268–275). Defendant also points out that the case law upon which Plaintiffs rely does not support the proposition that a retiree can compel a former employer to arbitrate pursuant to a CBA to which retirees are not a party (*id.* at PageID.270–271, 277–278). Last, Defendant opines that the fact that the employee grievance procedure excludes disputes over the life insurance and thrift plan provisions—benefits that relate only to current employees—does not speak to whether *retiree* medical benefits are included with the employee grievance procedure (*id.* at PageID.276).

In reply, Plaintiffs reiterate that "[t]he retirees are entitled to arbitration under *VanPamel* [*v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664 (6th Cir. 2013),] and four recent decisions of the Eastern District of Michigan ordering arbitration of disputes involving collectively-bargained retiree healthcare (Dkt 27 at PageID.284–285). Plaintiffs emphasize that the arbitrability presumption was applied in *VanPamel* and the four district court cases (*id.* at PageID.285–286). Additionally, regarding their renewed request for class-wide arbitration, Plaintiffs opine that there is "no reason for more than 50 individual arbitrations or for multiple lawsuits brought individually by retirees addressing the same CBAs and Honeywell breach" (*id.* at PageID.290–291).

Viewing all facts in the light most favorable to Defendant, the Court determines that a reasonable fact finder could not conclude from the presented evidence that a valid agreement to arbitrate the retiree benefits exists.

■ In *Granite Rock*, 561 U.S. at 297, 130 S.Ct. 2847, the United States Supreme Court "reemphasized" the proper framework for deciding when disputes are arbitrable under its precedents. The Supreme Court instructed that "[u]nder that framework, a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Id.* The Supreme Court held that "the first principle that underscores all of our arbitration decisions" is that "[a]rbitration is strictly 'a matter of consent,'" and thus "is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Id.* at 299, 130 S.Ct. 2847 (citation omitted; emphasis in original). *See also Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 201, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) ("arbitration is a matter of consent" and "will not be imposed upon parties beyond the scope of their agreement"); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Indeed, the Supreme Court instructed that its precedents, *particularly* its precedents applying the federal policy favoring arbitration of labor disputes, cannot be divorced from the first principle that underscores all of its arbitration decisions, i.e., that "[a]rbitration is strictly 'a matter of consent.'" *Granite Rock*, 561 U.S. at 299, 130 S.Ct.

2847 (quoting *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).

Plaintiffs repeatedly cite *Warrior & Gulf*, 363 U.S. 574, 80 S.Ct. 1347, for the proposition that the presumption of arbitrability is the "foundation of American labor policy" (Dkt 24 at PageID.93; Dkt 27 at PageID.285). However, in *Granite Rock*, 561 U.S. at 301 n.8, 130 S.Ct. 2847, the United States Supreme Court also explained that

> [a]lthough *Warrior & Gulf* contains language that might in isolation be misconstrued as establishing a presumption that labor disputes are arbitrable whenever they are not expressly excluded from an arbitration clause, 363 U.S. at 578–582, 80 S.Ct. 1347, the opinion elsewhere emphasizes that even in LMRA cases, "courts" must construe arbitration clauses because "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.*, at 582, 80 S.Ct. 1347 (applying this rule and finding the dispute at issue arbitrable only after determining that the parties' arbitration clause could be construed under standard principles of contract interpretation to cover it).

The Supreme Court pointed out that it has "never held that the presumption overrides the principle that a court may submit to arbitration 'only those disputes . . . the parties have agreed to submit.' " *Id.* at 302, 130 S.Ct. 2847 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The Supreme Court explained that it has instead applied the presumption favoring arbitration "only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their

express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute." *Id.* at 303, 130 S.Ct. 2847.

More recently, in *M & G Polymers USA, LLC v. Tackett*, —— U.S. ——, 135 S.Ct. 926, 933, 190 L.Ed.2d 809 (2015), the United States Supreme Court instructed that a court must use "ordinary principles of contract law" in reviewing an arbitration provision to determine what the parties intended. "In this endeavor, as with any other contract, the parties' intentions control." *Id.* (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010)). According to the Sixth Circuit, "[t]he first and best way to divine the intent of the parties is from the four corners of their contract and from traditional canons of contract interpretation." *Gallo v. Moen Inc.*, 813 F.3d 265, 273–74 (6th Cir. 2016), cert. denied —— U.S. ——, 137 S.Ct. 375, 196 L.Ed.2d 293 (2016). "Absent ambiguity from this threshold inquiry, no basis for going beyond the contract's four corners exists." *Id.* at 273–74.

In this case, Defendant and the UAW negotiated a multi-step employee grievance procedure in the 2011–2016 CBA that culminates in an arbitration option. The three-step employee grievance procedure set forth in the 2011–2016 CBA provides, in general, the following:

> 6.2.1 STEP ONE: An employee having a grievance should first notify the supervisor to whom they were assigned at the time the grievance occurred. . . .
>
> * * *
>
> 6.2.2 STEP TWO: If the Supervisor's answer is not satisfactory to the Union, the Union representative shall give notice of appeal of the grievance to the supervisor's supervisor . . .

* * *

6.2.3 STEP THREE: If the Company's answer in Step Two is not satisfactory to the Union, the Union representative shall give notice of appeal of the grievance to the Plant Manager . . .

(JE 1, Dkt 25–2 at PageID.241–242). If a grievance is not settled in the Third Step meeting, then the CBA instructs that "*the Union may*, within fifteen (15) calendar days thereafter, notify the Company's Human Resources Manager, in writing, of its appeal of the grievance to arbitration" (*id.* at PageID.243 [emphasis added] ). "Failure of *the Union* to so appeal to arbitration shall mean that the grievance has been withdrawn by the Union" (*id.* [emphasis added] ).

■ As Plaintiffs concede, "[r]etirees are no longer employees or union-represented" (Dkt 27 at PageID.287). *See Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 168, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) ("[t]he ordinary meaning of 'employee' does not include retired workers"). Hence, on the face of the employee grievance procedure in this case, a retiree cannot comply with the prerequisites to the option of arbitration: retirees are not "employees," do not have a supervisor to notify, and are no longer represented by the union, to whom the power to compel arbitration was granted during contract negotiations.

Plaintiffs' argument to the contrary rests heavily on the Sixth Circuit decision in *VanPamel*, 723 F.3d 664, where a group of retirees filed a class action challenging changes made to their healthcare benefits. There, however, the arbitration provision broadly provided that "[a]ny alleged violation of the CBA, its changes and this Termination Agreement will be subject to final and binding arbitration." *Id.* at 667. And the Sixth Circuit held that "[w]hen there is

a general or broad arbitration clause, the presumption of arbitrability [is] 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " *Id.* at 668 (citation omitted). Similarly, citing its decision in *Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 816 (6th Cir. 2006), the Sixth Circuit held that this presumption applies to disputes over retiree benefits if: "(1) the parties have contracted for such benefits, and (2) there is nothing in the agreement that specifically excludes the dispute from arbitration." *Id.* Hence, the factual premise upon which the holding in *VanPamel* relies is that the parties therein negotiated a "general" and "broad" arbitration clause. In contrast, Defendant and the UAW in this case negotiated a general employee grievance arbitration provision. There is no record support for application of the presumption of arbitrability to the retirees' dispute in this case.

Plaintiffs' argument to the contrary also rests on four decisions issued by district courts in the Eastern District of Michigan applying the presumption of arbitrability and ordering arbitration of disputes involving collectively-bargained retiree healthcare (Dkt 24 at PageID.95; Dkt 27 at PageID.284–285). However, a careful reading of the specific contractual language in these four cases again demonstrates that the courts applied the presumption of arbitrability because it reflected the judicial conclusion that arbitration of the particular dispute was what the parties intended, based on the construction of the language of their express agreements.

First, in *Burcicki v. Newcor, Inc.*, No. 02–cv–70230, 2010 WL 1131451 (E.D. Mich. Mar. 23, 2010) (Rosen, J.), the district court applied the presumption where

the parties' dispute resolution provision broadly provided that "[a]ll disputes or claims arising out of any alleged violation of the CBA, its modifications as contained herein, and this Termination Agreement will be resolved by arbitration." *Id.* at *9. Indeed, in rejecting the plaintiffs-retirees' argument that the dispute resolution provision only applied to its signatories—the employer and the union, the district court observed that "[i]f all that we were dealing with was a general employee grievance arbitration provision contained in a collective bargaining agreement that provided for retiree medical benefits, Plaintiffs' argument [against arbitration] might have some merit." *Id.* at *13.

Second, in *Audia v. Newcor, Inc.*, No. 10–10209, 2010 WL 2898515, at *4 (E.D. Mich. July 23, 2010) (Rosen, J.), where the arbitration provision likewise "broadly calls for any 'legitimate disputes' concerning the 'interpretation, application of specific terms [of the MOA], or performance of the specific terms of' the MOA to be resolved through arbitration," the district court held that there was "no question that Plaintiffs' claims in this case lie within the scope of this clause." The district court determined that it could not say that "the arbitration provisions in this case and in *Burcicki* are sufficiently distinguishable to dictate a different result here." *Id.*

Third, in *UAW v. Kelsey–Hayes Co.*, No. 11–14434, 2012 WL 2135505, at *1 (E.D. Mich. June 13, 2012) (Cook, Jr., J.), aff'd, 557 Fed.Appx. 532 (6th Cir. 2014), the district court found that "[t]he individual retirees in *Burcicki* and in the case at bar asserted claims under [the LMRA and ERISA] based on termination agreements which contained a broad arbitration clause." The district court found controlling the Sixth Circuit holding in *Cleveland*, 440 F.3d at 816, that "the presumption of arbitrability applies to disputes over retir-

ees' benefits if the parties have contracted for such benefits in their collective bargaining agreement and if there is nothing in the agreement that specifically excludes the dispute from arbitration." *Id.* at *2.

Last, in *UAW v. TRW Auto. U.S., LLC*, No. 11–cv–14630, 2012 WL 4620879, at *2 (E.D. Mich. Sept. 30, 2012) (Hood, J.), the provision at issue also broadly provided that "all grievances which may arise out of the employment relationship during the term of this Agreement" will be "the exclusive remedy for the enforcement by [the Union and the employees] of any claim against the Company." Also relying on *Cleveland*, the district court opined that the presumption of arbitrability applied to the disputes over the retirees' benefits because the parties contracted for such benefits in their collective bargaining agreement and there was nothing in the agreement that specifically excluded the claim from arbitration. *Id.*

In sum, unlike the general employee grievance arbitration provision in the case at bar, the Eastern District of Michigan cases upon which Plaintiffs rely contain broadly applicable arbitration provisions, supporting a proper application of the presumption of arbitrability therein, but not in the case at bar.

As pointed out by the parties in their supplemental briefing, the district court in *Fletcher v. Honeywell* examined Defendant's same December 28, 2015 notice to retirees and the multi-step grievance process that covered disputes "between the Company and the Union, or between the Company and any employee or group of employees." 207 F.Supp.3d 793, 796, 2016 WL 4939561, at *2 (S.D. Ohio 2016). The *Fletcher* court held that "[b]ecause Honeywell did not consent to arbitrate grievances brought by *retirees*, it would be improper to order arbitration of this dispute." *Id.* at 797, 2016 WL 4939561, at

*3 (emphasis in original). Plaintiffs argue that "*Fletcher* conflicts with *VanPamel*" (Dkt 40 at PageID.370). However, the *Fletcher* court held that "[u]nder these circumstances, the 'presumption of arbitrability' simply does not apply." *Id.* at 798, 2016 WL 4939561, at *4 (citing *Granite Rock*, 561 U.S. at 302, 130 S.Ct. 2847 ("we have never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes … that the parties have agreed to submit")). The *Fletcher* court reasoned that "[a]greeing to arbitrate disputes with the union and with employees does not constitute consent to also arbitrate disputes with retirees." *Id.* at 797, 2016 WL 4939561, at *3.

The *Fletcher* court relied on a factually analogous decision in *Quick Air Freight, Inc. v. Teamsters Local Union No. 413*, 613 F.Supp. 1263, 1273 (S.D. Ohio 1984), where the CBA similarly referred to "grievances 'by the aggrieved employee'" who "must present his complaint first orally 'to his supervisor.'" The district court in *Quick Air* held that "the language of the grievance procedure demonstrates that it was confined to the resolution of disputes between active employees and management." 613 F.Supp. at 1273. The district court pointed out that retirees have no supervisors and are not members of the bargaining unit represented by the union steward. *Id.* Further, the court observed that the dispute resolution language the

parties negotiated is "not surprising" as the agreement by management for resolution of grievances through arbitration is the "quid pro quo" for an agreement from employees not to strike. *Id.* at 1274.

In conclusion, Plaintiffs' argument depends on the fact that the CBA does not expressly exclude retirees, and Plaintiffs rely on the "presumption of arbitrability" to fill the negotiating gap, but the Court determines that the proper framework established by the Supreme Court instead dictates that mere silence on the issue does not constitute consent, and that the presumption, without record support, is not alone a sufficient basis upon which to compel arbitration. Viewing all facts in the light most favorable to Defendant, the Court determines that a reasonable fact finder could not conclude from the presented evidence that there exists a valid agreement between Defendant and Plaintiffs to arbitrate the retiree benefits.[2]

Moreover, although the question is not necessary for the Court to reach, the Court similarly rejects Plaintiffs' argument that compelling Defendant to class-wide arbitration would be proper, where the parties did not so expressly agree. *See Stolt–Nielsen*, 559 U.S. at 687, 130 S.Ct. 1758 (reasoning that class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed that "the parties' mere silence on the issue of class-action arbitration constitutes con-

---

2. Indeed, even assuming arguendo that the current dispute falls within the CBA's arbitration provision, the Court is not convinced that the UAW's grievance was made on behalf of retirees. *See, e.g., Huntley v. Ohio Ass'n of Pub. Sch. Employees*, 508 Fed.Appx. 361, 364 (6th Cir. 2012) (employer has no duty to arbitrate with the employee where the union did not submit the grievance to arbitration as required by the contract); *Gen. Drivers, Local Union No. 984 v. Malone & Hyde*, 23 F.3d 1039, 1043 (6th Cir. 1994) (absent language in a CBA guaranteeing an employee the right

to be represented in grievance and arbitration proceedings by someone other than the exclusive bargaining representative, an employer has no obligation to deal with an individual employee or any representative of the employee other than the exclusive bargaining representative). Even assuming arguendo that the UAW's grievance encompassed Plaintiffs, Plaintiffs have also not indicated how this Court could consider their arbitration demand timely under the 15–day time limit of the CBA. Plaintiffs' motion therefore fails in multiple ways.

sent to resolve their disputes in class proceedings"); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 600 (6th Cir. 2013) (class-wide arbitration cannot be inferred " 'solely from the fact of the parties' agreement to arbitrate' ") (quoting *Stolt–Nielsen, supra*). Plaintiffs' assertions about the advantages and efficiencies of class-wide arbitration (Dkt 27 at PageID.290–291) are not alone persuasive. The United States Supreme Court has never held that "courts may use policy considerations as a substitute for party agreement." *Granite Rock*, 561 U.S. at 303, 130 S.Ct. 2847.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion to Compel Arbitration of Collectively–Bargained Retiree Healthcare Dispute" (Dkt 24) is DENIED, and Count IV (Arbitration) is therefore DISMISSED.